UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NATHALIE MARIE ALENSKI,

                           Plaintiff,

            -against-                          **REPORT AND**
                                               **RECOMMENDATION**
                                               CV 03-2179 (SJF)

JOHN E. POTTER, Postmaster
General of the United States,

                           Defendant.
-------------------------------------------------------------X
**ORENSTEIN, Magistrate Judge:**

            Pursuant to the Orders of District Judge Sandra J. Feuerstein dated October 28, 2004 and

December 15, 2004, defendant's motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure and plaintiff's cross motion for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure have respectively been referred to the

undersigned.

            For the reasons that follow, this Court respectfully reports and recommends that

defendant's motion be granted and that plaintiff's cross motion be denied.

### FACTUAL BACKGROUND

            The United States Postal Service employed plaintiff Nathalie Marie Alenski ("plaintiff"

or "Alenski") as a part-time letter carrier at the Southhampton Post Office on April 16, 1984.

(Def. 56.1 Statement at ¶ 1).[1]  In December 1984, Alenski became a regular carrier with the

_____

            [1] "Def. 56.1 Statement at ¶__ " refers to the defendant's Local Civil Rule 56.1 Statement
pursuant to Local Civil Rule 56.1 (a) of the Local Civil Rules of the Southern and Eastern
Districts of New York.  Plaintiff has failed to submit a Statement in Opposition pursuant to the
Local Rules. _See_ Local Civil Rule 56.1(b) of the Local Civil Rules for the Southern and Eastern

1

Postal Service. (*Id.* at ¶ 2). Thereafter, in 1987, Alenski was transferred to the Riverhead Post Office. (*Id.* at ¶ 5).

Prior to commencing her employment, defendant required Alenski to have a Postal Service doctor conduct a medical examination and assessment and required plaintiff to inform the Postal Service of any restrictions in her functional abilities. (*Id.* at ¶¶ 3-4; McGinn Decl., ¶ 3, Exh. B). At the time of her examination, plaintiff did not report any restrictions on her functional abilities and signed a medical examination form, dated March 27, 1984, that included the following job description for "City Carrier:"

> The work involves continuous standing, stretching, reaching, bending and lifting. Responsible for delivery and collection of mail on foot or by vehicle under varying conditions. Spends major portion of workday in close contact with the public. Must serve in all kinds of weather. May be required to drive motor vehicles in all kinds of traffic and road conditions. May be required to carry on their shoulder loads weighing up to 35 pounds and to load or unload sacks of mail weighing up to 70 pounds.

(*Id.*).

On August 19, 1992, Alenski injured her back while walking her route at the Riverhead Post Office. (*Id.* at ¶ 6). Following this accident, Alenski sought medical treatment for the injury from Dr. Antonio Flores and was absent from work for approximately two weeks. (*Id.* at ¶¶ 7-8). When Alenski returned to work, she was placed on "limited duty[2]" and continued on

---

Districts of New York. Accordingly, the facts provided in the defendant's statement are deemed the facts in this case. *See* Local Civil Rule 56.1(c) of the Local Civil Rules for the Southern and Eastern Districts of New York. Defendant states in its Rule 56.1 Statement that this statement is based largely on plaintiff's sworn testimony and administrative submissions and therefore is offered as true only for purposes of its summary judgment motion.

[2]Plaintiff explained in her deposition that "limited duty" is for an on-the-job injury whereas "light duty" is for an off-the-job injury. (*Id.* at ¶ 9). The types of tasks plaintiff performed on limited duty and the number of hours she worked gradually increased over time and included such tasks as answering telephones, boxing mail, casing mail and other odd jobs.

limited duty until April 1993. (*Id.* at ¶¶ 9-10). Dr. Flores assessed in April 1993 that plaintiff was fit for full duty, and Alenski returned to walking her route as a letter carrier with assistance. (*Id.* at ¶ 11).

On May 10, 1993, plaintiff claimed a recurrence of her August 1992 back injury. (*Id.* at ¶¶ 12- 13). Alenski stopped seeking treatment from Dr. Flores and commenced chiropractic treatment from Michael Spector. (*Id.* at ¶¶ 13-14). Upon her return to work in May 1993, Alenski performed limited duty tasks, and between May 1993 through November 1995,[3] she was able to determine her own tasks unless her supervisor needed something done. (*Id.* at ¶¶ 16-19).

Plaintiff requested in the summer of 1995 that her route be placed up for bid in order to permit another person to obtain her route. (*Id.* at ¶ 20). By letter dated August 24, 1995, the Postmaster, Ziggy Wilinski, notified plaintiff that her tour was being posted "since [she could not] fulfill the duties and responsibilities of [her] assignment," that temporarily, she would be assigned as "an unassigned regular working limited duty, and that her "conditions of employment w[ould] be communicated . . . at a later date." (*Id.* at ¶ 21; McGinn Decl., ¶ 5, Exh. D).

By letter dated November 4, 1995, the Postal Service advised plaintiff that her limited duty assignment would end as of November 11, 1995 and that Alenski would be expected to assume the full duties and responsibilities of a regular letter carrier unless she could submit proper medical documentation to support a request for light duty. (*Id.* at ¶ 22; McGinn Decl., ¶ 6, Exh. E; *see also* McGinn Decl., ¶¶ 7-8, Exhs. F, G). From November 1995 to May 3, 1996,

---

(*Id.* at ¶ 10).

[3]During that time, on July 2, 1993, Alenski injured her back in an off-the-job motor vehicle accident. (McGinn Decl., Exh. R at 4).

3

the Postal Service assigned plaintiff to case mail for most of her time at work. (*Id.* at ¶ 25).

In November 1995, Ed Warren, Manager of Post Office Operations, informed plaintiff that her compensation file had been lost. (*Id.* at ¶ 23). Alenski contacted the Department of Labor's Office of Workers' Compensation Programs ("OWCP") and they informed her that her compensation claim had been closed as of February 1995. (*Id.* at ¶ 24).

Plaintiff also filed a separate claim for injury compensation for carpal tunnel syndrome on November 21, 1995, listing her occupation title on that form as "Mail Carrier." (*Id.* at ¶ 26; McGinn Decl., ¶ 9, Exh. H). The Department of Labor denied Alenski's claim for injury compensation on March 12, 1996. (*Id.* at ¶ 27; McGinn Decl., ¶ 10, Exh. I).

On May 2, 1996, while Alenski was working[4] at the Riverhead Post Office Annex,[5] she experienced "extreme pain" from her back, felt she was "emotionally a wreck" and admitted that she was physically unable to perform the job duties of a carrier. (*Id.* at ¶¶ 33-34). Alenski cased mail for part of the day until she was told by her supervisor[6] that because there was no light duty work[7] available for her to do on that day, she should go home without completing her eight-hour

---

[4]At that time, Alenski's official position title was carrier. (*Id.* at ¶ 32; McGinn Decl., ¶ 11, Exh. J). She testified at her deposition that as of May 2, 1996, she "was a carrier with the determination in the future of being transferred over to the clerk field due to the ability that the Postal Service and the union wanted to accommodate my disability which was decided in August of 1995 when my route was placed up for bid." (*Id.* at ¶ 31).

[5]At the time of the incident, the Riverhead Post Office was divided into three buildings, with the Annex housing the letter carriers. (*Id.* at ¶ 28).

[6]On that day, Steven A. Murray was Alenski's immediate supervisor. (*Id.* at ¶ 29). Murray supervised mails and delivery and all letter carriers. (*Id.*). Murray had supervised Alenski for approximately five years. (*Id.*).

[7]Murray believed that on May 2, 1996, Alenski's position was classified as "light duty" because she had not provided proper medical evidence that her back injury was caused by her

day.  (*Id.* at ¶ 35).

Plaintiff disputed that there was no work,[8] and returned to the workroom floor until Alenski's supervisor clocked her out and advised her to leave on her own or be escorted from the building by security.  (*Id.* at ¶¶ 37-38; McGinn Decl., ¶ 12,  Exh. K).  Plaintiff left on her own. (*Id.*).  Alenski ultimately filed a grievance with the union for the Postal Service's failure to provide Alenski her full eight-hour day for numerous days including May 2, 1996.  (*Id.* at ¶¶ 37-39; McGinn Decl., ¶ 13,  Exh. L).  The Postal Service and plaintiff entered into a consent agreement on July 12, 1997 in which Alenski was paid for the dates that she was denied eight hours of work.  (*Id.* at ¶ 39; McGinn Decl., ¶ 13,  Exh. L).

On May 3, 1996, Alenski reported back to work and began casing mail as assigned.  (*Id.* at ¶ 40; McGinn Decl., ¶ 12,  Exh. K).  Plaintiff's supervisor attempted to give Alenski a disciplinary letter for failure to follow instructions the previous day, but she refused to accept the letter without a union shop steward present.  (*Id.*; McGinn Decl., ¶ 12,  Exh. K).  Murray agreed to wait until the shop stewards could be present and provided Alenski the opportunity to secure medical documentation of her back injury so that she could work with a light duty status.  (*Id.*). Murray then directed Alenski to complete her "snowbird customer" assignment that she had been working on.  (*Id.*).  A few minutes later, Alenski told her supervisor that she could not finish the job and thereafter suffered a mental breakdown.  (*Id.* at ¶ 40; McGinn Decl., ¶ 12,  Exh. K).

---

August 1992 injury.  (*Id.* at ¶ 26; McGinn Decl., ¶¶ 7, 8, 12, Exhs. F, G , K).

[8]Alenski's claim of available work referred to third class mail that had arrived that day that her supervisor, Murray, had determined could be cased by the carriers in the course of their regular duties the following day.  (*Id.* at ¶ 38; McGinn Decl., ¶ 12,  Exh. K).

Murray took plaintiff to the hospital and she was admitted overnight.[9] (*Id.*). Plaintiff has not

returned to work at the Postal Service since that day. (*Id.* at ¶ 43). On May 5, 1996, Alenski

filed for Workers Compensation benefits for stress related problems, and on June 3, 1996, the

Department of Labor Office of Workers Compensation benefits denied plaintiff's claim.

(McGinn Decl. ¶ 19, Exh. R at 4).

On May 15, 1998, the Social Security Administration issued a finding that Alenski was

fully disabled as of May 3, 1996, and plaintiff continues to receive disability benefits. (Def. 56.1

Statement at ¶ 44; McGinn Decl., ¶ 14, Exh. M). Alenski retired from the Postal Service in

2001 and on February 19, 2001, the Office of Personnel Management approved her application

for disability retirement. (*Id.* at ¶ 45; McGinn Decl., ¶ 15, Exh. N). Plaintiff continues to

receive disability retirement benefits. (*Id.*).

## PROCEDURAL BACKGROUND

On May 3, 1996, Alenski sought an appointment with an EEO Counselor. (*Id.* at ¶ 46;

McGinn Decl., ¶ 16, Exh. O). In the precomplaint counseling request, Alenski listed her

position title as "Letter Carrier" and alleged that the Postal Service had discriminated against her

on the basis of her gender and a physical disability, when on May 2, 1996 she was sent home

before completing her eight hours of work, and subsequently not being afforded a forty hour

work week. (*Id.*). Alenski named Postmaster Wilinski and Supervisor Murray as the

discriminating officials. (*Id.*).

On July 2, 1996, Alenski filed a formal EEO complaint, charging employment

---

[9]Alenski was again admitted to the hospital on May 6, 1996 for suicidal and homicidal
thoughts, remained there for two weeks and was eventually diagnosed with Schizoaffective
disorder. (*Id.* at ¶¶ 41-42).

discrimination based on gender and handicap[10] alleging that the discriminatory event occurred on May 2, 1996 when supervisor Murray in conjunction with others told her to "punch out on the time clock and go home with less than an eight-hour work day even though there was work on the workroom floor." (*Id.* at ¶ 47; McGinn Decl., ¶ 17, Exh. P). Plaintiff listed her position title as "Full Time Carrier." (*Id.*).

By letter dated July 25, 1996, the Postal Service EEO informed plaintiff:

> We hereby accept the following issue only for investigation: Whether the Complainant was discriminated against based on physical disability in that on May 2, 1996, she was sent home before completing her eight (8) hours of work, subsequently not being afforded a forty hour work week. . . . If you are dissatisfied with this acceptance of your complaint for investigation, you should attempt to resolve your dissatisfaction with this office as early and expeditiously as possible. Otherwise, the agency's acceptance letter defining the issue in this complaint shall determine the scope of the investigation.

(*Id.* at ¶ 48; McGinn Decl., ¶ 18, Exh. Q). Plaintiff did not file any objections to the agency's acceptance letter.

On March 6, 2000, Administrative Law Judge Nadine E. Koch of the United States Equal Employment Opportunity Commission ("EEOC"), New York District Office issued Findings and Conclusions, pursuant to 29 C.F.R. § 1614.109, that plaintiff failed to show that the Agency discriminated against her based on physical disability (back injury) or mental disability (stress) in violation of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 701, when on May 2, 1996, she was sent home before completing her eight (8) hours of work, subsequently not being afforded a forty hour week. (*Id.* at ¶ 49; McGinn Decl., ¶ 19, Exh. R). The Postal Service accepted the Administrative Judge's conclusion as the Postal Service's final agency decision.

---

[10]Alenski specified her handicap as "Sibluxation/bulging disc" and "Limited Duty/Light Duty." (*Id.* at ¶ 47; McGinn Decl., ¶ 17, Exh. P).

(*Id.*; McGinn Decl., ¶ 20, Exh. S). Plaintiff timely appealed, and by decision dated September 12, 2002, the EEOC affirmed the agency's final decision, which adopted the Administrative Judge's recommended findings and conclusions. (*Id.* at ¶ 50; McGinn Decl., ¶ 20, Exh. S).

On May 6, 2003, plaintiff commenced the instant action in the United States District Court for the Eastern District of New York alleging principally discrimination on the basis of physical disability (permanent partial lower back injury) arising from her employment with the Riverhead Post Office when on May 2, 1996, she was sent home before completing her eight (8) hours of work and subsequently not afforded a forty hour work week in violation of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("ADA"). (*Id.* at ¶¶ 51-52; McGinn Decl., ¶ 21, Exh. T). In addition, plaintiff alleges employment discrimination claims based on (i) disparate treatment and gender discrimination; (ii) the improper processing and denial of her claim for injury compensation; (iii) the loss of her injury compensation file from the OWCP; and (iv) incidents other than the May 2, 1996 event. (*Id.* at ¶¶ 53, 55-57; McGinn Decl., ¶ 21, Exh. T).

The parties have now cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56. The underlying facts and applicable law surrounding each party's motion will be presented in the relevant discussion section below.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56( c); *see also Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986)); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 586, 106 S. Ct.1348 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed. R. Civ. P. 56).

In considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S. Ct. at 2511. In doing so, "[t]he district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party." *Sutera v. Schering Corp.,*73 F.3d 13, 15 (2d Cir. 1995) (citation omitted).

Moreover, where plaintiff is proceeding *pro se*, the court must review the *pro se* party's supporting papers liberally, and "interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). Nevertheless, a *pro se* plaintiff's "bald assertion," completely without evidentiary support is not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d

Cir. 1991); *see Columbo v. United States Postal Serv.*, 293 F. Supp.2d 219, 222 (E.D.N.Y. 2003)

("*pro se* status does not exempt a party from compliance with relevant rules of procedural and

substantive law") (internal quotation marks and citation omitted); *see also Karl v. Asarco Inc.*,

2004 WL 2997872, at *3 (S.D.N.Y. Dec. 23, 2004) (liberal standard does not excuse a *pro se*

plaintiff from "following the procedural formalities of summary judgment"); *Saldana v. Local

32B-32J Service Employer Int'l Union*, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) ("Even a

*pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on

the allegations of the complaint. Rather, when confronted with evidence of facts that would

support judgment in the defendant's favor as a matter of law, the plaintiff must come forward

with evidence in admissible form that is capable of refuting those facts.").

Further, where, as here, "cross-motions for summary judgment are filed, a court must

evaluate each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration." *Boy Scouts of

America v. Wyman*, 335 F.3d 80, 88 (2d Cir. 2003) (internal quotation marks and citation

omitted).

Finally, while the Court is mindful that it must "[b]e especially cautious in deciding

whether to grant this drastic provisional remedy in a discrimination case because the employer's

intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an

inference of discrimination," *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999), it is clear

that "summary judgment remains available to reject discrimination claims in cases lacking

genuine issues of material fact." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 40 (2d Cir.

1994); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1995) ("The summary judgment rule

would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a

talisman to defeat an otherwise valid motion."); *Miller v. Taco Bell Corp.*, 204 F. Supp.2d 456,

458 (E.D.N.Y. 2002) ("where an employer provides convincing evidence explaining its conduct,

and the plaintiff's case rests on conclusory allegations of discrimination, the court may properly

conclude that there is no genuine issue of material fact and grant summary judgment to the

employer").

### (A)   Exhaustion of Administrative Remedies

As a threshold matter, defendant contends that to the extent that plaintiff relies on events

of alleged discrimination in violation of the Rehabilitation Act[11] and/or Title VII other than the

causes of action Alenski alleged in her EEO complaint, such claims are not properly before this

Court because plaintiff failed to raise the events and/or the claims in the administrative charge she

had previously filed with the EEO.   According to defendant, Alenski's administrative charges

relate solely to the events surrounding the May 2, 1996 incident and assert that the Postal Service

discriminated against her based on her physical disability (and/or gender) and violated the

Rehabilitation Act (and/or Title VII) in that plaintiff was sent home before completing her eight-

---

[11]Plaintiff commenced this employment discrimination action pursuant to the ADA.
(Compl. at 1). As a federal employee, however, Alenski may not seek redress against the federal
government under the ADA, *see* 42 U.S.C. § 12111(5)(b)(i); *Rivera v. Heyman*, 157 F.3d 101,
103-04 (2d Cir. 1998) ("As a federal employee, [plaintiff] has no remedy for employment
discrimination under the ADA"). Rather, because the Postal Service is "an independent
establishment . . . of the Government of the United States," Alenski may seek redress for a claim
of employment discrimination based on disability against the Postal Service under the
Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). 39
U.S.C. § 201; *see Rivera*, 157 F.3d at 103. Inasmuch as the Court must construe *pro se*
plaintiff's allegations and papers liberally, *see supra*, the Court examines Alenski's
discrimination claims based on disability under the Rehabilitation Act and her claim of
discrimination based on gender under Title VII.

hour work day, subsequently not being afforded a forty hour work week. Because plaintiff has

raised for the first time in her Memorandum of Law in Opposition to Defendant's Summary

Judgment Motion and Exhibits ("opposition papers") and Memorandum of Law in Support of

Plaintiff's Cross Motion for Summary Judgment and Exhibits ("cross motion papers"), and has

referenced for the first time in her federal complaint, discrimination based on the processing and

denial of plaintiff's injury compensation claim, the loss of her compensation file, and incidents

other than the May 2, 1996 event, defendant contends such claims are unexhausted.

A plaintiff may commence an employment discrimination action against the United States

or one of its agencies pursuant to Title VII or the Rehabilitation Act[12] in federal court only after

filing a timely charge with the EEOC, or with "a State local agency with authority to grant or seek

relief from such practice," and obtaining a right-to-sue letter. 42 U.S.C. § 2000E-5(e) and (f)

(Title VII) and 29 U.S.C. § 794a(a)(1) (Rehabilitation Act); *see Fitgerald v. Henderson*, 251 F.3d

345, 358-59 (2d Cir. 2001) ("Title VII requires that an employment discrimination claimant

pursue administrative procedures before commencing a lawsuit"); *Briones v. Runyon*, 101 F.3d

287, 289 (2d Cir. 1996); *Rivera*, 157 F.3d at 103 (The exhaustion requirements of Title VII as

well as the remedies, procedures and rights set forth in Section 717 of Title VII apply to a federal

employee seeking relief pursuant to the Rehabilitation Act). Exhaustion of administrative

remedies is "an essential element of Title VII's statutory scheme," and is therefore a precondition

to raising a claim under Title VII and/or the Rehabilitation Act in federal court. *Francis v. City of*

---

[12]A federal employee alleging a disability discrimination claim under the Rehabilitation Act is governed by the same administrative procedures and timeliness requirements as those set forth in Title VII. *See Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000); *Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998); *Padilla v. Potter*, 2004 WL 3090591, at *2( E.D.N.Y. July 22, 2004).

*New York*, 235 F.3d 763, 768 (2d Cir. 2000); *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) ("Exhaustion of remedies is a precondition to suit"); *Boos*, 201 F.3d at 181; *Columbo*, 293 F.Supp.2d at 222-23 ("Prior to bringing a discrimination claim under the Rehabilitation Act, the employee must exhaust all available administrative remedies in a timely fashion with the EEOC"). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate and take remedial action." *Brown v. Coach Stores Inc.*, 163 F.3d 706, 712 (2d 1998) (internal quotation marks and citation omitted).

Nonetheless, the Second Circuit has recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (quoting *Shah v. New York State Dep't of Civil Service*, 168 F.3d 610, 613 (2d Cir. 1999); *accord Holtz*, 258 F.3d at 83. Claims that are raised for the first time in the district court may be considered reasonably related (1) "if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge[s] that w[ere] made," *Fitzgerald*, 251 F.3d at 359-60 (internal quotation marks and citation omitted); (2) where the claims allege "retaliation by an employer against an employee for filing an underlying claim of discrimination," *see Shah*, 168 F.3d at 614; and (3) where the claims allege subsequent acts that were "essentially the same as the allegedly wrongful conduct in the EEOC complaint," *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir. 1984).

Of these three types of "reasonably related" claims, only the first has relevance in the

instant matter.[13] "Reasonably related" in this circumstance "means that despite the claimant's having failed to specify the precise charge, the EEOC likely would have investigated the conduct complained of anyway." *Pemrick v. Stracher*, 67 F. Supp.2d 149, 170 (E.D.N.Y. 1999). That being said, "the loose pleading allowance is not satisfied by vague, generalized statements. Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably." *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 432 (W.D.N.Y. 1998); *see also Findlay v. Reynolds Metals Co.*, 82 F. Supp.2d 27, 34 (N.D.N.Y. 2000) ("Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated.") (internal quotation marks and citation omitted).

In the case at hand, plaintiff's EEO complaint unambiguously limits Alenski's claims to discrimination arising from the May 2, 1996 incident that resulted in her being sent home prior to completing eight hours of work and subsequently not being afforded a forty hour work week with the Postal Service. Thus, only to the extent that plaintiff's employment discrimination causes of action relating to the processing and denial of her compensation benefits, loss of her

---

[13]The other two circumstances are inapplicable because in her federal complaint (1) plaintiff has not alleged a claim of retaliation arising from the filing of her complaint with the EEO, *see, e.g., Francis v. Chemical Banking Corp.*, 62 F. Supp.2d 948, 960 (E.D.N.Y. 1999) (holding the second type of "reasonably related" claim applies to retaliation claims that are asserted after the employee files the administrative charge); *Pustilnik v. Hynes*, 1998 WL 813411, at *5 (E.D.N.Y. July 21, 1998) ("The retaliation exception applies only to claims of retaliation that are asserted in a federal complaint arising from the filing of an EEOC complaint"); and (2) the charges fail to allege any further incidents of discrimination carried out in precisely the same manner alleged in the EEO charges, *see, e.g., Almendral*, 743 F.2d at 967-68.

compensation file and relating to incidents other than the May 2, 1996 event, arise out of the May 2, 1996 incident and could be expected to grow out of the charges made in the EEO complaint, can the claim be deemed exhausted.

Plaintiff's formal administrative complaint, filed with the EEO on July 2, 1996, did not apprise the agency that Alenski was raising discrimination claims beyond the events of May 2, 1996. Plaintiff's attached statement to the complaint states in pertinent part:

> On May 2, 1996, Steven Murray, Supervisor acting in conjunction with Daniel Healy, A/Manager Post Office Operations, Ziggy Wilinski, Postmaster, and Mary McDonnell, Senior Injury Compensation Specialist told me to punch out on the time clock and go home with less than an eight hour work day even though there was work on the workroom floor. I went to inquire of the Postmaster, Ziggy Wilinski, why I was being sent home. His reply was that Mary McDonnell reported that my compensation case for my back injury was denied and that I am on light duty. He did nothing to send me back to work. I went to work the next day and I was ordered to go back to regular full duty by 5/6/96.

> At the Riverhead Post Office there is a male employee, Ben Yacono who is on light duty and given a forty hour work week. This discrimination is sexual in nature, male versus female, since, I a female, am not being afforded the ability to work a forty hour work week on limited duty. I am permanently partially disabled due to subluxations and a bulging disc in my lower back. I am also being discriminated due to my disability since the managers at Riverhead Post Office will not provide me with a work week of forty hours. I have repeatedly requested since 2/15/96, a forty hour work week and have been repeatedly denied. . . . I am requesting as a resolution to be granted a forty hour work week as was my male co-worker who is on light duty.

(McGinn Decl., ¶ 17, Exh. P).

Moreover, by letter dated July 25, 1996, the Postal Service EEO Office informed Alenski that it had accepted for investigation the sole issue of whether plaintiff "was discriminated against based on physical disability in that on May 2, 1996, she was sent home before completing her eight (8) hours of work, subsequently not being afforded a forty hour work week." (McGinn Decl., ¶ 18, Exh. Q). The agency's acceptance letter defining the issue in the complaint informed plaintiff of her right to object to this acceptance if she were dissatisfied, and that otherwise, "the

15

agency's acceptance letter defining the issue in this complaint shall determine the scope of the investigation." (*Id.*). Plaintiff did not file any objections

In sum, plaintiff's EEO complaints and declarations consist of a recitation of the alleged discriminatory incident that occurred on May 2, 1996 and charge defendant with an unlawful employment discriminatory practice based on defendant's unequal terms and conditions of employment and failure to accommodate Alenski's disability. Nothing in Alenski's administrative charge suggests that defendant discriminated against plaintiff apart from the issue accepted for investigation by the EEO.

(1) **Discrimination Based on the Improper Processing and Denial of Compensation Benefits and Loss of Compensation File**

(a) **Review of Denial of Compensation Benefits**

As a preliminary matter, the Court notes that the Federal Employees' Compensation Act "creates a system through which the Government provides compensation for the . . . disability of federal employees" *See* 5 U.S.C. § 8101 *et seq.*; *see United States v. Sforza,* 2000 WL 1818686, at *2 (S.D.N.Y. Dec. 12, 2000). Section 8124 makes clear that the Department of Labor, not the Postal Service, processes and decides an injury compensation claim. *See* 5 U.S.C. § 8124. Moreover, section 8128(b) provides that "[t]he action of the Secretary [of Labor] or [her] designee in allowing or denying payment under this subchapter is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). Because section 8128(b) precludes a court's review of the OWCP decision to award or deny compensation benefits, the Court lacks subject matter jurisdiction to review the OWCP's decision to deny plaintiff's injury compensation claim. *See United States v. Sforza*, 326 F.3d 107, 114-15 (2d Cir.

2003) (observing that the "jurisdictional bar in § 8128(b) seems to have been designed chiefly to ensure [1] that the courts not be burdened by a flood of small claims challenging the merits of compensation decisions and [2] that the Secretary should be left free to make the policy choices associated with disability decisions") (internal quotations and citation omitted).

Notwithstanding, federal courts have construed FECA to allow for some, albeit limited judicial review for constitutional claims that the Agency exceeded the scope of its delegated authority and for claims invoking violations of a clear statutory mandate. *See Murphy v. United States*, 340 F. Supp.2d 160, 168-70 (D. Conn. 2004). While the Second Circuit has not directly addressed whether an implicit and narrow exception exists to FECA's preclusion of judicial review provision, the Court has approvingly acknowledged in *dicta* that "[m]any sister circuits have held that § 8128(b) lacks preclusive effect on an employee's suit raising a constitutional challenge to an [OWCP]'s denial of FECA benefits. Additionally, some circuits have held that § 8128(b) does not bar jurisdiction even over a direct appeal by an employee denied benefits, so long as the employee argues in federal court that OWCP violated a clear statutory mandate under FECA." *Sforza*, 326 F.3d at 111-12.

Here, the closest plaintiff comes to lodging a constitutional challenge to the OWCP's denial of her compensation claim in her federal complaint or alleging that the OWCP violated a clear statutory mandate is the statement in her opposition papers, namely, "both agencies [*i.e.*, Postal Service and OWCP] are far from smelling like rose when it came to this OWCP case and two others," and the statement in her cross-motion papers that she is requesting a "decision in which I hope can eventually impact on other Federal employees in the future. A decision to never have a lost compensation file impact a worker as violently as it impacted me." Interpreting these

statements liberally, plaintiff appears to be constitutionally contesting the FECA process itself. However, because plaintiff gives no support for this challenge and the crux of her argument seems to be the denial of her benefits and loss of her injury compensation file, this Court cannot maintain jurisdiction over this claim. *See Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (holding that a federal court does not "acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms"). Accordingly, to the extent the plaintiff is seeking to have this Court review the denial of her injury compensation claim, the Court respectfully reports and recommends that summary judgment be granted in favor of defendant on this claim.

### (b)     Discrimination Relating to Compensation Claim

With respect to plaintiff's allegations of discrimination based on the Postal Service improper processing and denial of her injury compensation claim and loss of her compensation file, there is no indication in the record that plaintiff sought EEO counseling or filed the necessary procedural requirements for these discriminatory allegations or that such discriminatory conduct was reasonably related to the May 2, 1996 incident. Plaintiff merely asserts conclusory allegations of discrimination relating to discrete incidents, many of which focus on a time frame prior to the May 2, 1996 event.[14] Thus, to the extent that plaintiff relies on these discrete

---

[14]For example, in her federal complaint, plaintiff states in pertinent part:

On May 2, 1996, they (the United States Postal Agency) again stated to me as they have EEOC that my lower back injury was denied by OWCP I know this not to be true because I have submitted proof that Congressman Forbes gave OWCP a chance to produce this denial. This denial was produced for the first time on June 3, 1996). The reason this decision was made a little over three year [sic] after I filed reoccurrence was because the Agency (U.S.P.C.) lost my compensation file in a move from Melville, N.Y. to Hauppauge, N.Y. in the summer (August) of 1993. This therefore resulted in my

discriminatory acts such as statements made by Postal Service employees concerning the

processing and denial and loss of Alenski's compensation file or the circumstances surrounding

the delay of three months for the OWCP to approve an MRI as a basis for discrimination claims in

violation of the Rehabilitation Act or Title VII, such claims are unexhausted. *See National*

*Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2066 (2002) (holding

that for purposes of determining whether a claim is time-barred under Title VII, "[e]ach discrete

discriminatory act starts a new clock for filing [administrative] charges alleging the act," and

determining in that case that prior discrete discriminatory acts were untimely and thus not

---

loosing [sic] the right to have an open OWCP case.

(Compl. ¶ 8 at 4-5). In addition, in Alenski's opposition papers, she states in pertinent part:

OWCP had many reasons for not approving plaintiff's M.R.I. for three months, many reasons for sending people to "watch" and "film" plaintiff, many reasons for accepting a fraudulent medical code from plaintiff's initial physician (Flores), and many reasons for "closing" plaintiffs' [sic] without proper written, mailed notification. . . . The reason possibly being . . . [a] black male transvestite, named Lewis Lang, hired by plaintiff's mother to do housecleaning jobs. State investigators from unemployment and DDS asked plaintiff and her mother to make statements against his fraudulent activities. Mr. Lang also held two more jobs on the books. The reason may possibly be the Postal Inspector who told the Injury Compensation Specialist, Robert Cossaro, to do his job in getting OWCP to approve a three-month old M.R.I. request for plaintiff (this after he alleged I threatened him) . . .Although OWCP was mentioned over and over again, plaintiff maintained the six people from the Postal Service were the ones responsible for discriminatory acts. . . Defendants Exhibit "G" shows communication dated May 12, 1995, just short of two years after my file went "missing/lost" in a 1993 move. . . . Plaintiff was notified six months later in November 1995 that her file went "missing/lost" in 1993. . . .

[B]oth agencies are far from smelling like a rose when it came to this OWCP. case and two others. . . . John E. Potter's six employees named in plaintiff's EEO case executed discriminatory acts toward her, especially on May 2, 1996. . . .

(Pl. Memorandum in Opp. at 7-8).

actionable); *see also Carmellino v. District 20 of the New York City Dep't of Educ.*, 2004 WL 736988, at *2-3 (S.D.N.Y. Apr. 6, 2004) (observing that *Morgan*'s timeliness approach applies to the Rehabilitation Act).

In short, the alleged facts underlying plaintiff's administrative charge fail to encompass a theory of discrimination beyond the events surrounding the May 2, 1996 incident. Under these circumstances, an investigation into plaintiff's administrative charge would not fall within the scope of, nor would be reasonably expected to grow into an investigation of plaintiff's claims of discrimination relating to the processing and denial and loss of Alenski's injury compensation claim, particularly when such acts occurred prior to and subsequent from the May 2, 1996 incident. *See, e.g., Ige v. Command Sec. Corp.*, 2002 WL 720944, at *6 (E.D.N.Y. Mar. 12, 2002) ("An investigation into the underlying incidents of Plaintiff's disparate treatment claim would not lead an investigator to inquire about a claim of hostile work environment"); *Crespo v. New York City Transit Auth.*, 2002 WL 398805, at *8 (E.D.N.Y. Jan. 7, 2002) (rejecting as unexhausted plaintiffs' harassment and hostile environment claims because they "rely on different facts and embody different legal theories than the discrimination claims raised in the EEOC Charge [and] would not reasonably prompt an investigation into the facts that underlie her claims"); *Ghose v. Century 21, Inc.*, 108 F. Supp.2d 373, 376 (S.D.N.Y. 2000) (holding plaintiffs' claims of discrimination based on his association with African-American co-workers, a hostile work environment and retaliation claims were not reasonably related to claims of racial and national origin discrimination that were alleged in plaintiffs' original filing with the EEOC); *Findlay*, 82 F. Supp.2d at 34 (precluding plaintiff from asserting disparate treatment claim because plaintiff's EEOC complaints solely allege incidents underlying plaintiff's hostile work

environment and retaliation claims); *cf. Osier v. Broome County*, 47 F. Supp.2d 311, 319-21

(N.D.N.Y. 1999) ("Plaintiff's conclusory allegations of 'sexual harassment' are insufficient to

give defendants notice of the many incidents of a hostile work environment that she is now

asserting in this lawsuit"); *Szarka v. Reynolds Metals Co.*, 17 F. Supp.2d 115, 124-26 (N.D.N.Y.

1998) (holding a charge of retaliation cannot reasonably be expected to grow out of charges of sex

and age discrimination).

### (2)    Discrimination Relating to Incidents Other than the May 2, 1996 Event

Likewise, with respect to the allegations of discrimination based incidents other than the

May 2, 1996 event that plaintiff set forth in her opposition papers[15] and cross motion papers,[16]

---

[15]In addition to the allegations of discrimination plaintiff states in her federal complaint and opposition papers set forth in footnote 15, *see supra*, Alenski gives a list of acts that have taken place against her since her August 19, 1992 injury:

| | |
|---|---|
| 1) | No cooperation with postal management, postal compensation specialist, and OWCP on work injury of August 19, 1992. |
| 2) | Being requested to produce doctor's notes with one to two days weekend notice when doctor's notes were already on file. |
| 3) | Management placed my route up for bid stating that I was not fit for duty. Management reneged on an agreement with the union to place me in a permanent rehabilitation position. |
| 4) | Management gave me less than a forty hour work week at times. |
| 5) | Management ordered me to work contrary to my doctors work duty restrictions. |
| 6) | I was ordered to perform a duty that caused more pain and suffering, both mental and physical to my on the job injury of 8/19/92 |
| 7) | OWCP denied me timely medical care, approving care three and a half months after a request from my physician. |
| 8) | I was requested to apply for a light duty position, when I was entitled to a limited duty position. |
| 9) | The compensation specialist misplaced my files and fell short of discharging her responsibility. |
| 10) | The compensation specialist said numerous time that my claim was denied before OWCP ever rendered a decision |
| 11) | OWCP has fallen short of discharging its responsibilities by closing my case and never notifying me of any decision regarding my 8/19/92 case until June of 1996. |

some of which overlap with Alenski's claims relating to the processing of her compensation file, *see supra,* there is no indication that plaintiff sought EEO counseling or filed the necessary procedural requirements for these discriminatory allegations nor is there any evidence that such discriminatory conduct was reasonably related to the May 2, 1996 incident. Plaintiff's conclusory allegations of discrimination again relate to discrete incidents, many of which focus on a time frame prior to the May 2, 1996 event and bear little or no relationship to the May 2, 1996 event.

For example, Alenski's allegations of discrimination relate to the processing of her injury compensation file, decisions regarding medical care and benefits, notification procedures regarding her injury compensation claim, the filming and surveillance of her home in connection with her benefits claim, the loss of her compensation file, stress caused by defendant in connection with the processing of her compensation claim, statements made by compensation

---

(Compl. ¶ 8 at 6).

[16]In addition to the claims of discrimination relating to plaintiff's compensation file, Alenski proffered numerous documents in her cross motion papers to support her claim of discrimination during certain periods of time prior to the May 2, 1996 event. For example, she submitted documents (1) requesting "Postal Management to accommodate Nathalie Marie Alenski into a rehabilitation position . . . and [t]hese documents were agreed upon by Riverhead Management and the Union as proof for permanent reassignment. . . . Postal Management, never put in writing to anyone, that my request for reassignment was denied. However, this accommodation was reneged on by Postal Service Management in November 1995," (Alenski, Aff. at 1); (2) showing that defendant filmed her in 1994 and 1995 thinking she may have been "faking her injury" and that "these inspectors documented and filmed at times three driveway builders, a painter, two minor landscapers, and a live-in helper. . . . This time could have been use[d] more efficiently by Postal Management. These inspectors needed to be looking for a missing file, not chasing a 'goose'," (*id.* at 3); and (3) showing that "years of low self-esteem cause[d] by Postal Management (took away a pending Postal Inspector job immediately after 8/19/1992 accident) plus stress caused by Postal Management (lost compensation file) and combined by excess lower back pain (casing mail eight hours) created a collapsing and short circuit to my brain," (*id.*).

specialists and other Postal Service employees concerning her benefits claim, management directions and decisions concerning plaintiff's position, defendant's "reneg[ing]" on an unwritten agreement to provide plaintiff a rehabilitation position in 1995 as well as her claim of working less than a forty hour work week at times other than the May 2, 1996 event. Given these allegations "rely on different facts and embody different legal theories" than Alenski's discrimination claims of unequal terms and conditions of employment and failure to accommodate her disability on May 2, 1996 which she raised in her EEO complaint, the Postal Service never had the opportunity to squarely address through the EEO investigative process the issue of these prior discrete discriminatory allegations. *Crespo*, 2002 WL 398805, at *8. The Postal Service likewise had no notice of these claims and therefore could not respond to the allegations of discrimination levied against it at the agency level as required under Title VII and the Rehabilitation Act. *See Stewart v. United States Immigration and Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985) ("Indeed, the purpose of the exhaustion requirement, which is to give the administrative agency the opportunity to investigate, mediate, and take remedial action, would be defeated if we were to permit [the plaintiff] to by-pass exhaustion in the present case"); *see also Morgan*, 536 U.S. at 113 *Carmellino*, 2004 WL 736988, at *2-3.

In summary, because Alenski's discrimination claims relating to the processing and denial and loss of plaintiff's injury compensation file, and discrimination claims relating to incidents other than the May 2, 1996 event, referenced for the first time in her federal complaint and raised for the first time in her opposition submissions and cross motion papers, charge discrete discriminatory acts outside the scope of the May 2, 1996 incident, they fail to satisfy a condition precedent to suit. Accordingly, this Court respectfully reports and recommends that the Court

grant defendant's summary judgment motion and deny plaintiff's cross motion in this regard and dismiss these claims as unexhausted.

### (B)    Discrimination Claims

The Supreme Court has "established an allocation of the burden of production and an order for the presentation of proof on . . . discriminatory treatment cases." *St. Mary's Honor Ctr.,* 509 U.S. at 506, 113 S. Ct. at 2746. Thus, courts analyzing employment discrimination claims under Title VII or the Rehabilitation Act apply the burden-shifting analysis outlined in *McDonnell Douglas and Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089 (1981). *See Richardson v. New York State Dep't of Correctional Servs.,* 180 F.3d 426, 443 (2d Cir. 1999) (applying *McDonnell Douglas* framework in cases brought under Title VII); *D'Amico v. City of New York,* 132 F.3d 145, 150 (2d Cir. 1998) (applying *McDonnell Douglas* framework in cases brought under the Rehabilitation Act).

Under the burden-shifting framework established in *McDonnell Douglas,* first, a plaintiff must prove by a preponderance of the evidence a *prima facie* case of discrimination. *See St. Mary's Honor Ctr.,* 509 U.S. at 506, 113 S. Ct. at 2746. If the plaintiff meets this burden, the burden shifts to the defendant, and the defendant must produce evidence that the adverse employment actions were taken "for some legitimate, nondiscriminatory reason." *Id.* at 509, 113 S. Ct. at 2742 (quoting *Burdine,* 450 U.S. at 252-54, 101 S. Ct. at 1093-94); *see James,* 233 F.3d at 153-54.

Finally, if the defendant articulates a legitimate, nondiscriminatory reason for the employment actions, "the presumption raised by the prima facie case is rebutted, and drops from the case." *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S. Ct. at 2747. The plaintiff then has the

24

burden to prove by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See Burdine*, 450 U.S. at 252-53, 101 S. Ct. at 1093; *James*, 233 F.3d at 156 ("[O]nce a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the *McDonnell Douglas* presumptions disappear from the case, and the governing standard is simply whether evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."); *Lanzo v. City of New York,* 2000 WL 804628, at *6 (E.D.N.Y. May 18, 2000) ("The plaintiff must then show, without the benefit of any presumptions, that it is more likely than not that the employer's decision was motivated at least in part by a discriminatory reason. Because the defendant has at this point offered a nondiscriminatory reason for its actions, the plaintiff must show that the proffered reason is in reality a pretext for unlawful discrimination."). The Court must apply a case-by-case approach, "examining the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Roge v. NYP Holdings, Inc.*, 257 F.3d 167-68 (2d Cir. 2001) (internal quotation marks and citation omitted).

Notwithstanding these shifting burdens, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000) (quoting *Burdine*, 450 U.S. at 253-54, 101 S. Ct. at 1089).

The Court will apply these principles to plaintiff's employment discrimination claims brought pursuant to the Rehabilitation Act and Title VII.

### (1) Discrimination Claims Under the Rehabilitation Act

The Rehabilitation Act, which was intended to deter discrimination against individuals

with disabilities and "to expand their employment opportunities and their integration into society,

prohibits the Postal Service . . . from discriminating against handicapped individuals solely by

reason of their [disabilities]." *Gilbert v. Frank*, 949 F.2d 637, 639-40 (2nd Cir. 1991) (internal

citations omitted). Section 504 of the Rehabilitation Act provides in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in
> section 705(20) of this title, shall, solely by reason of her or his disability, be excluded
> from the participation in, be denied benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance or . . . by the United States
> Postal Service.

29 U.S.C. § 794(a). Under the Act, an employer discriminates by, *inter alia*, not making a

"reasonable accommodation to the known physical or mental limitations" of an otherwise

qualified employee, unless the employer can demonstrate that the accommodation would impose

"an undue hardship" on the operation of its program. 45 C.F.R. §84.12(a).

The standards used to determine a violation of this section are the same standards that are

applied under the Americans with Disabilities Act, *see* 29 U.S.C. § 794(d) ("The standards used to

determine whether this section has been violated in a complaint alleging employment

discrimination under this section shall be the standards applied under title I of the Americans with

Disabilities Act of 1990 . . . and the provisions of sections 501 through 504, and 510 of the

Americans with Disabilities Act of 1990 . . . and as such sections relate to employment");

*Rodriguez v. City of New York,* 197 F.3d 611, 618 (2d Cir. 1999) (holding the ADA and the

Rehabilitation Act "impose identical requirements"), and the case law applicable to interpreting

the ADA is applicable to construing the Rehabilitation Act, *see Francis v. City of Meriden*, 129

F.3d 281, 284 n.4 (2d Cir. 1997) ("Because the ADA and the RHA are very similar, we look to case law interpreting one statute to assist us in interpreting the other").

Defendant contends that summary judgment is appropriate on Alenski's disability discrimination claim because plaintiff has failed to establish a *prima facie* case of employment discrimination based on physical disability in that Alenski was not "otherwise qualified" for employment as a letter carrier. Plaintiff opposes summary judgment arguing that she was disabled under the Rehabilitation Act and her physical condition substantially impaired her ability to work, but that with reasonable accommodation she was otherwise qualified for her position as a letter carrier.

The Rehabilitation Act, like the ADA, requires an employer to make a reasonable accommodation to the known disability of a qualified employee. 29 U.S.C. § 794(d), *incorporating by reference* 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of employment discrimination for failure to accommodate under the Rehabilitation Act, plaintiff must prove that: (1) her employer was subject to the statute; (2) that she was an individual with a "disability" within the meaning of the Rehabilitation Act; (3) she was "otherwise qualified" to perform the essential functions of her job; and (4) that her "employer had notice of the plaintiff's disability and failed to provide such accommodation." *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1514 (2d Cir. 1995); *see D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998); *see also Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999); *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). "The employer can defeat the claim if it shows (a) that making a reasonable accommodation would cause it hardship, and (b) that the hardship would be undue. The burden

27

of proof on these two issues is on the employer." *Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997); *see Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001).

In the instant matter, for purposes of its summary judgment motion, defendant concedes that Alenski is an individual with a "disability" related to her back within the meaning of the Rehabilitation Act. It is also undisputed that the Postal Service is explicitly covered under the Act. The claim therefore turns on the third and fourth elements, namely whether Alenski was otherwise qualified for the position of letter carrier and whether defendant failed to provide a reasonable accommodation to her purported disability.

To be "otherwise qualified," plaintiff must show that she was able "to perform the essential functions of the job either with or without a reasonable accommodation." 45 C.F.R. § 84.3(k)(1); *see Borkowski v. Valley Central School Dist.*, 63 F.3d 131, 137 (2d Cir. 1995) (citing *School Board of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S. Ct. 1123 (1987)); *see also Southeastern Comm. College v. Davis*, 442 U.S. 397, 406, 99 S. Ct. 2361, 2367 (1979) (holding an employee is "otherwise qualified" for a job only if she is "able to meet all of the [position's] requirements in spite of [her] handicap"). Thus, Alenski must demonstrate that she can meet the requirements of her position at the Postal Service "without assistance or that an accommodation exists that permits [her] to perform the job's essential functions." *Borkowski,* 63 F.3d at 138.

Plaintiff's official position title at the Postal Service was carrier (city). (McGinn Decl. ¶ 3, Exh. J). The job description for city carrier, which was included in the certificate of medical examination which Alenski signed prior to commencing her employment with the Postal Service, entailed extensive exertional work involving: continuous standing, stretching, reaching, bending

and lifting; delivery and collection of mail on foot or by vehicle under varying conditions; heaving carrying on their shoulder loads weighing up to 35 pounds and heavy lifting of sacks of mail weighing up to 70 pounds. (McGinn Decl. ¶ 3, Exh. B). Alenski concedes in her federal complaint and in her deposition testimony that on May 2, 1996, she was physically unable to perform the essential functions of her job as a letter carrier because of the disability related to her lower back. (Compl., ¶¶ 7-8; Def. 56.1 Statement at ¶34). Further, Alenski fails to offer any evidence that any adjustment or accommodation would permit her to perform such tasks. *See Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122-23 (2d Cir. 1999) ("In order to establish a *prima facie* case under . . . the Rehabilitation Act, the plaintiff must show as part of her burden of persuasion that an effective accommodation exists that would render her otherwise qualified").

Notwithstanding, plaintiff contends that the Postal Service should have accommodated her by providing her with a "limited duty assignment" which would have afforded Alenski a forty-hour work week. (Pl. Opposition Memorandum, at 3; Pl. Cross Motion Memorandum at 3). In support of her contention, plaintiff appears to rely on evidence in her opposition papers that defendant restructured her position prior to May 2, 1992, stating, "[s]ince May 11, 1993, her job description included limited duty work . . . and the fact that plaintiff was to be assigned to a limited duty position . . . shows that those limited duty assignments [were] reasonable accommodations the Postal Service gave the plaintiff for more than three years to make her 'otherwise qualified.'" Plaintiff's reliance on this evidence is misplaced.

A review of the record indicates that following her injury in 1992 until November 1995 plaintiff worked a limited duty assignment because she had filed a re-occurrence of an injury with the OWCP. Alenski testified in her deposition that during this time she performed a variety of

29

tasks and was given flexibility in the Riverhead Post Office to choose many of her assignments, including resting in a closet when she was feeling poorly. (Def. 56.1 Statement at ¶¶ 16-19). In November 1995, when defendant learned that OWCP denied plaintiff's benefits claim, defendant notified Alenski that her limited duty ended and that she would have to resume her regular duties as a letter carrier unless she could submit proper medical documentation to support a light duty assignment. Significantly, plaintiff did not submit the required medical documentation. Thereafter on November 21, 1995, plaintiff filed a separate, unrelated injury compensation claim and listed her job title as mail carrier. The OWCP denied the claim in March 1996.

Nonetheless, the Postal Service returned plaintiff to a light duty assignment at the Riverhead Post Office without requiring her to perform her regular duties as a letter carrier up to and including May 2, 1996. It was only when plaintiff's supervisor determined on May 2, 1996, that there was no further light duty work available, that Murray sent plaintiff home for the remainder of the day. However, the fact that the Postal Service permitted plaintiff to work prior to May 2, 1996 in a limited duty status and/or light duty assignment, albeit for over three years, without requiring Alenski to perform the regular duties of a full time letter carrier "does not mean that these functions were not essential functions of the job within the meaning of the Act." *Trobia v. Henderson*, 315 F. Supp.2d 322, 331 (W.D.N.Y. 2004) (holding postal service employee who due to back disability was physically unable to perform several essential tasks of "box station" job, including handling mail bags weighing over 20 pounds, could not be "otherwise qualified" for purposes of Rehabilitation Act failure-to-accommodate claim, regardless of fact that employee had been kept in position for period of 18 months; coworkers had performed tasks that employee could not perform during his tenure); *see Wernick v. Federal Reserve Bank of New York*, 91 F.3d

30

379, 384 (2d Cir. 1996) ("reasonable accommodation does not mean elimination of any of the job's essential functions"); *cf. Castellano v. City of New York*, 946 F. Supp. 249 (S.D.N.Y. 1996) (finding police officers were not "qualified" individuals where it was undisputed that they could not perform essential functions of a police officer with any level of accommodation).

To the contrary, "evidence that accommodations were made so that an employee could avoid a particular task merely shows the job could be restructured, not that [the function] was non-essential." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001) ("To find otherwise would unacceptably punish employers from doing more than the [Act] requires, and might discourage such an undertaking on the part of employers") (internal quotation marks and citations omitted); *accord Trobia*, 315 F. Supp.2d at 331; *see Arline*, 480 U.S. at 289 n.19, 107 S. Ct. at 1131 n.19 ("Employers . . . are not required to find another job for an employee who is not qualified for the job he or she was doing, [even though] they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies"); *Mitchell*, 190 F.3d at 8 (rejecting plaintiff's argument that a "reasonable accommodation in light of his disability would be to restructure the Head Custodian position . . . to more sedentary duties" and holding that under the ADA "reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position" that were not available at the time).

In sum, the Court concludes that because the functions plaintiff was not performing in her limited duty assignment on May 2, 1996 were essential functions of her position as carrier, and plaintiff has failed to offer any evidence that an accommodation exists that would permit her to perform the job's essential functions, Alenski fails to satisfy the third element that she was "otherwise qualified." *See Mitchell*, 190 F.3d at 8. Thus, the Court need not reach the final

element. *See Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994) ("If proof of any of the four elements is lacking, the claim must fail");*Gilbert*, 949 F.2d at 641; *Reidy v. Runyon*, 971 F. Supp. 760, 768 (E.D.N.Y. 1997) ("Failure to establish one of these four elements is fatal to a claim of employment discrimination").

Likewise, to the extent that plaintiff raises a claim of discrimination under the Rehabilitation Act based on disparate treatment, such a claim would fail because Alenski is unable to initially establish a *prima facie* case. *See Nakis v. Potter*, 2004 WL 2903718, at *17 (S.D.N.Y. Dec. 15, 2004) ("In order to establish a *prima facie* case of discriminatory treatment, a plaintiff must show that (1) her employer is covered by the Rehabilitation Act; (2) she suffers from a disability within the meaning of the Rehabilitation Act; (3) she was qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of [her] disability") (internal quotation marks and citations omitted); *see also Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) ("Following the Supreme Court's directive, plaintiff must initially come forward with facts sufficient to establish a *prima facie* case that [she suffered an adverse employment action] under circumstances giving rise to an inference of discrimination").

Finally, to the extent that Alenski asserts an allegation of employment discrimination against defendant based on a claim that the Postal Service erroneously assigned plaintiff in a limited duty position rather than a light duty position on May 2, 1996, such error would potentially violate the Postal Service Rules and Regulations and/or the collective bargaining agreement ("CBA"), not the Rehabilitation Act. The CBA and Postal Service regulations, however, do not provide for a private cause of action. *See United States v. Fausto*, 484 U.S. 439,

108 S. Ct. 668 (1988) (foreclosing plaintiff's claim of a right to judicial review of adverse action taken in violation of postal regulations); *Shelby Resources v. United States Postal Serv.*, 619 F. Supp. 1546, 1549 (S.D.N.Y. 1985) (district court lacks jurisdiction to compel Postal Service to follow its own regulations). Notably, plaintiff filed a grievance for defendant's failure to provide her a full eight-hour day for several days, including May 2, 1996, and she entered into an agreement with the Postal Service in which she was paid for any hours below her eight-hour work day during that period. (McGinn Decl. ¶ 13, Exh. L). *Cf. Wright v. Snow*, 2004 WL 1907687 (S.D.N.Y. Aug. 25, 2004) (barring plaintiff from raising discrimination claim "in her lawsuit . . . the same 'matter' that was already raised in negotiated procedures"). Thus, this Court respectfully reports and recommends that the Court grant defendant's summary judgment motion and deny plaintiff's cross motion with respect to any claims based on violations of the CBA and Postal Service regulations.

Accordingly, because plaintiff fails in her ability to establish a *prima facie case* of discrimination under the Rehabilitation Act, this Court respectfully reports and recommends that the Court grant defendant's summary judgment motion and deny plaintiff's cross motion for summary judgment on the discrimination claims brought pursuant to the Rehabilitation Act.

### (2)    Disparate Treatment Claim under Title VII

Title VII of the Civil Rights Act of 1964 provides, in pertinent part:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a); *see James v. New York Racing Ass'n*, 233 F.3d 149, 153-55 (2d Cir. 2000).

33

Plaintiff alleges that she was subjected to unequal terms and conditions of employment based on her gender. According to plaintiff, defendant engaged in a course of conduct on May 2, 1996 that resulted in defendant sending plaintiff home before completing her eight hours of work rather than affording her an accommodation to a limited duty position in violation of Title VII. Plaintiff alleges that in similar circumstances defendant afforded male employees an accommodation.

In order to establish a *prima facie* case of disparate treatment based on gender, plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered a materially adverse change in the terms and conditions of her employment; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 311-12 (2d Cir. 1997) (citing *Burdine*, 450 U.S. at 253 & n.6, 101 S. Ct. at 1094 n.6); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *Brown v. Triboro Coach Corp.*, 153 F. Supp.2d 172, 176 (E.D.N.Y. 2001).

The plaintiff's burden of demonstrating a *prima facie* case is *de minimus*. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998). "In determining whether the plaintiff has met the *de minimus* initial burden of showing circumstances giving rise to an inference of discrimination, the function of the court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (internal quotation marks and citation omitted).

Alenski satisfies two of the four elements of a *prima facie* case of disparate treatment

discrimination, namely she is a member of a protected class, and that she suffered an adverse

employment action when defendant sent her home on May 2, 1996 before completing eight hours

of work, subsequently not being afforded a forty hour work week. *See Richardson v. New York*

*State Dep't of Correctional Servs.*, 180 F.3d 426, 446 (2d Cir. 1999) (holding an employee suffers

an adverse employment action when she "endures a materially adverse change in the terms and

conditions of [her] employment") (internal quotation marks and citation omitted); *Brown*, 153 F.

Supp.2d at 177 (same).

For purposes of this motion, the Court will assume *arguendo* that Alenski was qualified

for her position. Accordingly, the real issue in dispute is whether defendant treated her differently

than similarly-situated male employees under circumstances giving rise to an inference of

discrimination. *See Fitzgerald v. Henderson*, 251 F.3d 345, 356 (2d Cir. 2001) (to establish a

*prima facie* case of disparate treatment under Title VII, "a plaintiff must show, *inter alia*, that she

was subjected to adverse employment action under circumstances giving rise to an inference of

prohibited discrimination"); *Smith v. Xerox Corp.*, 196 F.3d 358, 370 (2d Cir. 1999) ("a disparate

treatment claim looks at how an individual was treated compared to her similarly situated

coworkers"). Plaintiff contends principally that she was accorded disparate treatment on May 2,

1996 in comparison to Benjamin Yacono, a male employee at the Riverhead Post Office who

defendant accommodated with a light duty assignment and two other male clerk employees who

were accommodated in permanent rehabilitation positions.

In determining whether plaintiff has supported such an inference, the proper inquiry is

"[w]hether the evidence can reasonably and logically give rise to an inference of discrimination

under all of the circumstances." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999).

This "may be proven by showing that a similarly situated individual not in [plaintiff's] protected

group . . . was treated differently." *Tramble v. Columbia Univ.,* 1999 WL 61826, at *5 (S.D.N.Y. Feb. 10, 1999); *see also Hargett v. National Westminster Bank,* 78 F.3d 836, 839 (2d Cir. 1996). "Although the ultimate burden in making a prima facie case is slight, the issue of whether fellow employees are similarly situated is somewhat strict." *Brown v. Middaugh*, 41 F. Supp.2d 172, 184 (N.D.N.Y. 1999). "To be similarly situated, the individual with whom [a plaintiff] attempts to compare [himself] must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *see Francis v. Runyon,* 928 F. Supp. 195, 203 (E.D.N.Y. 1996) ("[e]mployees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance, evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.").

Applying this standard, Alenski's contention that defendant accorded her disparate treatment in comparison to Yacono and the two other male employees at the Riverhead Post Office is unavailing. First, an examination of all of the circumstances in the record surrounding defendant's failure to afford Alenski her full eight hour day on May 2, 1996 does not yield an inference that defendant accorded disparate treatment to plaintiff in comparison with Yacono or the two other male clerks. To the contrary, plaintiff has not proffered any evidence that these male employees were similarly situated or were employees who did not have an alleged disability but were treated more favorably. For example, in her EEO complaint, plaintiff provided sparse details about Yacono and made the bald assertion that Yacono is on light duty assignment and

given a forty hour work week based on his gender.[17] (McGinn Decl. ¶ 17, Exh. P).

While plaintiff gives additional details of Yacono's employment with defendant in her opposition papers[18] and cross motion papers, [19]these details most strikingly indicate that plaintiff and Yacono were not similarly situated. (McGinn Decl. ¶ 21 Exh. T). Plaintiff makes clear that Yacono was a male custodian in a light duty assignment and points out that he lacked carrier knowledge. Comparing her employment position with Yacono, plaintiff notes that on May 2,

---

[17]In her EEO complaint, Alenski states in pertinent part, "At the Riverhead Post Office there is a male employee, Ben Yacono who is on light duty and given a forty hour work week. This discrimination is sexual in nature, male versus female, since I, a female, am not being afforded the ability to work a forty hour work week on limited duty." (McGinn Decl. ¶ 17, Exh. P).

[18]In her Opposition Papers, Alenski states in relevant part, "Male custodian Benjamin Yacono was in a light duty status doing desk work (starting in 1995). The assignment for the duration of his tour was to answer the phone when the supervisors or plaintiff didn't. As a custodian, even though he is assigned to the clerk craft, Benjamin's light duty assignments were close to nothing due to any lack of clerk/carrier knowledge. . . . Benjamin Yacono continued in a light duty status with a forty hour work week for several years until he retired. The plaintiff on the other hand was known as a jack-of-all trades during her employment career. Her knowledge qualified her to perform in many crafts in the Post Office. . . . As with any Postal/Federal employment, limited duty employees' take precedent above any light duty employees. This is true even among "differently situated" employees. Limited duty employees may be sent to any location(s) to be afforded a forty hour work week. In Riverhead, there are three separate building [sic] where employees work. Some, may be assigned to one, two or even all three buildings during the course of their day. If a forty hour week could not be afforded to the plaintiff in Riverhead, there are other surrounding Post Offices to accommodate her. Benjamin Yacono, on the other hand was told by supervisors to take rides from building to building (a way of keeping "busy"). Benjamin Yacono['s] direct supervisor was Kevin Goree. . . . Please note that the plaintiff was a carrier on May 2, 1996 . . . . The plaintiff's direct supervisor was Stephen A. Murray because he was in charge of the carriers. . . . (Pl.'s Memorandum in Opposition, at 4-5).

[19]In her cross motion papers, Alenski states in pertinent part:

Riverhead Management did however accommodate a male clerk, Benjamin Yacono, in 1994 or 1995 after he suffered an off the job injury (stroke). Benjamin Yacono was accommodated until he retired several years after May 2, 1996. Benjamin Yacono was a full time custodian.

(Alenski Aff. at 1).

1996 she was a carrier in a limited duty status, was known as a jack-of-all trades during her employment career and seems to suggest that her limited duty status should have taken precedent over his assignment in light duty.

Finally, plaintiff's deposition testimony further evinces that Yacono and Alenski were not similarly situated. Alenski states that Yacono and she are "in different crafts. The thing is we're both male and female. One was accommodated and one wasn't. And I had a legitimate post office injury . . . and [he had] an at-home injury." (McGinn Decl. ¶ 2, Exh. A, at 48-49). Alenski also pointed out that Kevin Goree was Yacono's supervisor and that Stephen Murray was her supervisor on the day in question. *See Mangaroo v. Boundless Tech., Inc.*, 253 F. Supp.2d 390, 401 (E.D.N.Y. 2003) ("In order to be similarly situated, other employees must have the same supervisor as the plaintiff, must have been subject to the same discipline and must have engaged in similar conduct").

Because Yacono and Alenski were not similarly situated with respect to their job titles and position assignments at the time defendant sent plaintiff home prior to completing her eight hour work day, their circumstances cannot be compared. *See Shumway*, 118 F.3d at 64 (holding in order to show disparate treatment, a party must show the other individual "was similarly situated in all material respects"). Plaintiff has provided no support for her claim that defendant's employment decisions occurred under circumstances giving rise to an inference of discrimination based on plaintiff's sex.

Inasmuch as Alenski does not claim a position with defendant as a custodian in a light duty assignment, but rather claims a position as a carrier in a limited duty assignment, and therefore is not similarly situated with Yacono, Alenski's charge of disparate treatment due to her gender is insufficient to make out a Title VII claim. *See Lizardo v. Denny's Inc.*, 270 F.3d 94, 101

(2d Cir. 2001) ("When plaintiffs seek to draw inferences of discrimination by showing that they were similarly situated in all material respects to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances.").

Finally, to the extent Alenski contends that defendant accorded her disparate treatment in comparison to the two other male clerk employees at the Riverhead Post Office who were accommodated in permanent rehabilitation positions, such contention is unpersuasive. Plaintiff gives little information about these male clerks or their circumstances,[20] and makes clear in her opposition papers that she was a carrier on May 2, 1996, and "was actually held back from becoming a clerk in August-November 1995." Thus, the statement on its face distinguishes her position from the male clerks. (Pl.'s Memorandum in Opposition, at 5). Moreover, she offers only the conclusory statement in her federal complaint that the discrimination occurred because she is a woman. Finally, plaintiff has failed to adduce evidence sufficient to link their accommodation to her gender or to defendant's gender-based animus. Hence plaintiff cannot attempt to compare herself with them in order to create an inference of sex discrimination. *See Graham v. Long Island R. R.*, 230 F.3d 34, 40 (2d Cir. 2000).

In summary, because Alenski cannot show that she has suffered an adverse employment action that was the product of discriminatory animus, this Court finds that plaintiff has failed to establish a *prima facie* case of disparate treatment discrimination. Accordingly, this Court

---

[20]In her federal complaint, Alenski states in pertinent part, "A few years ago at the Riverhead Post Office two male clerk employees were accommodated in permanent rehabilitation positions. Subsequently, one has remained on the postal roles collecting compensation for six years and the other one has retired. To date both rehabilitation positions were never replaced with that of any other clerk or clerks. However, part of this work was provided to me for close to three years starting in May of 1993. . . . In February of 1996, I was ordered not to perform any of the above duties except forwarding snowbird mail. (McGinn Decl. ¶ 21, Exh. T, ¶8 at 7).

respectfully reports and recommends that the Court grant defendant's summary judgment motion and deny plaintiff's cross motion on the discrimination claims brought under Title VII.

## CONCLUSION

Having reviewed the parties' respective submissions and arguments set forth therein, and for the foregoing reasons, the Court respectfully reports and recommends that the Court grant defendant's motion for summary judgment and deny plaintiff's cross motion for summary judgment.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. 636 (b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992).

Dated:      Central Islip, New York
           February 18, 2005

_____

                MICHAEL L. ORENSTEIN
                United States Magistrate Judge